RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0054P (6th Cir.)
File Name: 02a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee/*
  *Cross-Appellant,*

  *v.*

JACK CHILINGIRIAN,
  *Defendant-Appellant/*
  *Cross-Appellee.*

Nos. 99-2276/2376

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-80670—John Corbett O'Meara, District Judge.

Argued: June 13, 2001

Decided and Filed: February 13, 2002

Before: JONES, SUHRHEINRICH, and DAUGHTREY,
Circuit Judges.

———————

**COUNSEL**

**ARGUED:** Kenneth H. Karam, PERALTA, JOHNSTON &
KARAM, St. Clair Shores, Michigan, for Appellant. Jennifer
J. Peregord, ASSISTANT UNITED STATES ATTORNEY,
Detroit, Michigan, for Appellee. **ON BRIEF:** Kenneth H.

1

Karam, PERALTA, JOHNSTON & KARAM, St. Clair Shores, Michigan, for Appellant.  Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

————————————

## OPINION

————————————

NATHANIEL R. JONES, Circuit Judge.  Defendant Jack Chilingirian appeals his federal conviction and sentence on money laundering charges.  On April 23, 1997, a grand jury of the Eastern District of Michigan returned a multiple count indictment against Chilingirian, an attorney, and three of his clients, Jack, Charles, and George Rashid.  The Rashids were indicted on the basis of fraudulent business ventures concerning the development, manufacture, and sale of automobile radar-braking systems to avoid collisions.  At a bench trial, Chilingirian was convicted of conspiracy to commit money laundering.  He was sentenced to 37 months imprisonment, two years supervised release, and restitution in the amount of $335,167.50.  Chilingirian now appeals his conviction, citing inadequacies in the indictment and inconsistencies in the verdicts, and challenging the Bail Reform Act. The government cross-appeals, contending that the defendant was sentenced under the wrong guideline. We agree with the government's contention and therefore **AFFIRM**  the defendant's conviction, but **REMAND** the case to permit re-sentencing under the appropriate provisions of the Sentencing Guidelines.

## I.  FACTS

On April 23, 1997, a grand jury in the Eastern District of Michigan returned a multiple count indictment against three brothers, Jack, Charles, and George Rashid, and their attorney, Jack Chilingirian. The indictment arose out of a scheme largely carried out by  Jack and Charles Rashid to defraud investors in fraudulent business entities, based on actual or nearly-completed multi-million dollar contracts for

Whether this court views the district court's action as a choice between guidelines or a departure, the result is the same.  The heartland analysis that should be applied prior to determining which guideline applies is identical to the analysis that should be applied in determining whether a departure is warranted.  *See Smith*, 186 F.3d at 298. Moreover, in the departure context, this court has held that the fact that a money laundering offense involved proceeds related to unlawful activity other than drug trafficking or organized crime is not sufficient to take the offense outside of the heartland of the money laundering guideline. *United States v. Reed*, 167 F.3d 984, 995 (6th Cir. 1999);  *United States v. Ford*, 184 F.3d 566, 587 (6th Cir. 1999). Thus, even if the district court's decision is treated not as a departure but as an application of a more appropriate guideline, the district court's rationale was not sufficient to warrant the lower court's decision not to apply the money laundering guideline to the money laundering offense.  Accordingly,  the district court's sentence should be reversed and remanded with instructions to re-sentence Chilingirian in accordance with the money laundering guideline.

## IV. CONCLUSION

For the reasons stated above, we  **REVERSE** the district court's sentencing order and **REMAND** the case to the district court with instructions to re-sentence Jack Chilingirian in accordance with the money laundering guideline.  We **AFFIRM** the remainder of the district court's judgment.

The Third Circuit has since clarified the holding of *Smith*:

Where money laundering is not 'minimal or incidental,' and is 'separate from the underlying crime' and intended to 'make it appear that the funds were legitimate' or to funnel money into further criminal activities, § 2S1.1 is an applicable guideline. The guideline may also be applicable if there is evidence that the activities which fulfilled the broad statutory requirements for money laundering were extensive with drug trafficking or other serious crime.

*United States v. Mustafa*, 238 F.3d 485, 495 (3d Cir. 2001) (quoting *United States v. Bockius*, 228 F.3d 305, 313 (3d Cir. 2000)). In this case, it could also be argued that even if this Circuit were to apply *Smith*, its rationale would fail to produce the result desired by Chilingirian. The money laundering in this case was not minimal nor incidental, and it appears to have been funneled through the client trust account in order to make it appear legitimate and to further the radar technology/fraud scheme.

The Third Circuit relied on U.S.S.G. Appendix A (1999), which states "[i]f, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." Similarly, this court has previously relied on this language and held that the district court must decide which guideline is most applicable considering the facts involved. *See United States v. Hood*, 210 F.3d 660, 664 (6th Cir. 2000).

This portion of the Guidelines Manual has since been amended so that the sentencing court is now required to use the guideline that Appendix A says is applicable. *See* U.S.S.G., Appendix A (2000). Thus, the *Smith* approach is no longer relevant.

the sale of automobile radar braking systems and related radar technology.[1]

Chilingirian served as the attorney for the Rashids and the Rashid family's company, Vehicle Radar Safety Systems, Inc. ("VRSS") from 1988 or 1989 through the date of the indictment. He held a fifteen percent share in VRSS.

In 1992, Chilingirian represented VRSS when it filed a Chapter 11 bankruptcy reorganization petition, which was later converted into a Chapter 7 liquidation proceeding. During the pendency of the bankruptcy proceedings, a group of investors, referred to as the "Rudder Group," entered the picture. In August 1992, Charles Rudder met the Rashids when he was working for Gencorp Aerojet ("Aerojet"), which was discussing with VRSS the possibility of buying its radar braking technology, or perhaps the company. In December of 1992, Aerojet informed the Rashids that they would not go forward with any deals. Nevertheless, Rudder and other people who knew Chilingirian also invested in VRSS.

In early 1995, in light of the bankruptcy, the Rudders began taping telephone conversations with the Rashids and Chilingirian. In one of these conversations, Chilingirian said that he had been working on something that was going to be fabulous. Chilingirian also reassured others that he was working on several deals.

In mid-1995, Chilingirian attempted to settle all of the bankruptcy claims against VRSS and the Rashids with money available from a group of investors known as the "Tindall Group." Paul Tindall, and his wife Ann Louise, lived in Canada and were related to Jack Rashid's wife. The Tindalls met with Jack Rashid in January 1995. In late June 1995, the Rashids went to Toronto to present their technology to, and

---

[1] For a more detailed account of the facts regarding the Rashid investment schemes and the trials and appeals of Jack and Charles Rashid, *see United States v. Rashid*, 274 F.3d 407 (6th Cir. 2001). George pleaded guilty to a lesser charge and did not appeal.

seek investments from, a group of over thirty people who learned of this opportunity through Paul Tindall.

In December 1995, Advanced Radar Systems ("ART") was incorporated in Canada in order to take in the money from the Canadian investors. Neither the Rashids nor Chilingirian informed the Canadian investors about VRSS's bankruptcy or their plan to use the investors' money to pay creditors. The Canadians invested heavily, but the money was put into VRSS. According to the government's summary, the records of Chilingirian's client trust fund show that $2.48 million in checks was given to Jack Rashid by ART-Canada investors. Chilingirian endorsed $2.267 million of those checks into his trust account. Chilingirian then wrote $275,000 worth of checks to himself, gave $1.473 million to Jack Rashid, and disbursed $480,000 to settle various investors' claims against Rashid. Aside from Peter Tindall, none of the Canadian investors have ever recouped any money invested with the Rashids.

When Chilingirian incorporated ART in Canada on behalf of Jack Rashid, he opened a new client trust account as well. According to the government, this account was used to launder money received from the last group of investors, the "Kraft Group." James Kraft was a long time friend of Jack Rashid. He was solicited for money in April 1996, and invested money from his retirement account. He also brought in contributions from over thirty other investors.

In 1996, Chilingirian and members of the Rudder Group discussed settlement of the investors' claims against the Rashids/VRSS. Some investors did get a portion of their money back, but they had to sign affidavits exculpating Jack Rashid. Similarly, despite numerous complaints from investors, Chilingirian continued to deposit money from the Kraft Group into his client trust account, then withdraw some for Jack Rashid and a lesser amount for himself.

On April 23, 1997, Chilingirian was indicted on charges of conspiracy in violation of 18 U.S.C. § 371, mail fraud in

### E. Fraud Guideline or Money Laundering Guideline?

The government, on cross-appeal, argues that the district court erred by sentencing Chilingirian according to the fraud guidelines, rather than the money laundering guidelines. Chilingirian was found guilty of conspiracy to commit money laundering and Jack Rashid pleaded guilty to the same offense. However, Judge O'Meara sentenced the defendants according to different sentencing guidelines. He sentenced Jack Chilingirian according to the sentencing guideline for fraud (§ 2F1.1) and sentenced Jack Rashid according to the sentencing guideline for money laundering (§ 2S1.1). The fraud guideline results in a significantly lower offense level. The government argues that the court should have applied the guidelines for money laundering to Chilingirian.

This is a case of first impression in this circuit. Chilingirian and the district court rely on case law from the Third Circuit. In *United States v. Smith*, 186 F.3d 290 (3d Cir. 1999), the Third Circuit held that the money laundering guidelines were too harsh to apply to what it described as a routine fraud case in which the money laundering activity was an "incidental by-product" of a kick-back scheme. *Id.* at 300. The court explained that the sentencing court must perform a "heartland" analysis when deciding what guideline should be applied and when deciding whether to depart. *See id.* at 298. Thus, in order to determine whether the money laundering guideline should apply, the court had to determine what conduct was considered by the Sentencing Commission to fall within the heartland cases covered under the money laundering guideline. The court considered the Sentencing Commission's proposed amendments to the money laundering guideline, which were rejected by Congress, and "conclude[d] that the Sentencing Commission itself has indicated that the heartland of U.S.S.G. § 2S1.1 is the money laundering activity connected with extensive drug trafficking and serious crime." *Id.* at 300.

## D.  Multiplicity, double jeopardy and special findings

Chilingirian argues that Count 33--conspiracy to commit money laundering--and Count 1-- § 371 fraud conspiracy-- charged the same conspiracy, and thus the indictment was multiplicitous.  A claim that an indictment is multiplicitous should be raised before trial.  FED. R. CRIM. P. 12(b)(2). Chilingirian did not raise this claim until his appeal to this court.  Thus, the claim made is not timely.  *See United States v. Hart,* 70 F.3d 854, 859-60 (6th Cir. 1995).

Chilingirian further argues that when the court acquitted him on the § 371 conspiracy charge, the double jeopardy clause precluded the court from convicting him on the money laundering charge.  The double jeopardy clause protects against successive prosecutions for the same crime and against multiple punishments for the same crime. *See Missouri v. Hunter*, 459 U.S. 359, 365 (1983); *United States v. Sharpe,* 996 F.2d 125, 130 (6th Cir. 1993).  "[T]he protection against multiple prosecutions is not implicated when a defendant faces multiple charges in a single proceeding." *United States v. Barrett*, 933 F.2d 355, 360 (6th Cir. 1991).  Chilingirian was prosecuted on all of the charges in a single proceeding.  He was convicted on only one count and sentenced only on that count.  Thus, the double jeopardy clause is not implicated.

Finally, Chilingirian argues that his constitutional right to due process was violated by the district court's refusal to issue special findings.  The court entered its general finding of not guilty on all of the counts except Count 33 on April 29, 1999. Later, on May 4, 1999, Chilingirian moved for special findings pursuant to FED. R. CRIM. P. 23.  The court denied the motion because it was not made before the court entered its general finding.  Rule 23 provides, "[I]n a case tried without a jury the court shall make a general finding and shall in addition, on request made before the general finding, find the facts specially . . . ."  Thus, the district court appropriately denied the motion.  *See United States v. Gustafson*, No. 93-4247, 1994 WL 276883, at *3 (6th Cir. June 21, 1994).

violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, aiding and abetting the interstate transportation of funds taken by fraud in violation of 18 U.S.C. § 2314, tampering with a witness in violation of 18 U.S.C. § 1512, and conspiracy to launder money instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h).

On April 29, 1999, the district court convicted Chilingirian of conspiracy to commit money laundering.  On October 8, 1999, Chilingirian filed  a Motion and Brief requesting bail pending appeal.  On October 18, 1999, Chilingirian's request for bail was denied and he was sentenced to 37 months imprisonment, 2 years supervised release, and restitution in the amount of $335,167.50.  On appeal, Chilingirian argues that the district court's denial of his motion for bail violated his constitutional rights.  He also argues that the district court's acquittal of him on certain offenses was inconsistent with the court's verdict of guilty on the conspiracy to commit money laundering charge. Further, Chilingirian alleges that certain counts within the indictment charged the same offense and, thus, the indictment was multiplicitous. On cross-appeal, the government alleges that the district court erred by sentencing Chilingirian according to the fraud guidelines.

## II.  STANDARD OF REVIEW

This court reviews a district court's denial of bail under an abuse of discretion standard. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993).  The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal. *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988).

This Court reviews for clear error a district court's factual findings in its application of the Sentencing Guidelines. *See United States v. Jones*, 159 F.3d 969, 980 (6th Cir. 1998) (citing *United States v. Winston*, 37 F.3d 235, 240 (6th Cir. 1994)).  However, the district court's legal application of the guidelines is reviewed *de novo. See United States v. Moses*, 106 F.3d 1273, 1277 (6th Cir. 1997).  This Court reviews the

question of whether there was an amendment to the indictment *de novo*. *United States v. Robison*, 904 F.2d 365, 368 (6th Cir.), *cert. denied*, 498 U.S. 946 (1990).

### III. ANALYSIS

**A. Bail Reform Act**

The district court denied Chilingirian's motions for release on bail pending appeal. The lower court found that although the defendant did not pose a risk of flight or danger, his appellate issues were not substantial. The Supreme Court also subsequently denied Chilingirian's application for release pending bail. *Chilingirian v. United States*, 531 U.S. 1064 (2001).

Title 18 U.S.C. § 3143(b) [The Bail Reform Act of 1984] requires a district court to make two findings before granting bail pending appeal. To establish entitlement to release pending appeal, defendant must show 1) by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of another person or the community, and 2) that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, or a sentence that does not include a term of imprisonment. 18 U.S.C. §§ 3143(b); *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985).[2] In this case, release on bail was denied because defendant failed to show that the appeal raised a substantial question of law.

On appeal, Chilingirian argues that 18 U.S.C. § 3143(b) violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment. Chilingirian argues that denying a convicted incarcerated defendant's bail motion and forcing

---

[2]In addition to reversal or a new trial, the substantial question of law can be likely to result in: "(iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 1343(b).

While the distinction between a variance and a constructive amendment is sketchy, the consequences of each are significantly different. A variance will not constitute reversible error unless "substantial rights" of the defendant have been affected. *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986). A constructive amendment, on the other hand, is "a variance that is accorded the per se prejudicial treatment of an amendment," because, like an actual amendment, it infringes upon the Fifth Amendment's grand jury guarantee. *See Ford*, 872 F.2d at 1235. Consequently, a constructive amendment warrants reversal of a conviction. *See id.* The defendant has the burden of proving that the variance in question rose to the level of a constructive amendment. *See United States v. Blandford*, 33 F.3d 685, 701 (6th Cir.), *cert. denied*, 514 U.S. 1095 (1995).

We conclude that Chilingirian's indictment was not broadened by the district court's guilty verdict on conspiracy to launder money even though there were acquittals on the fraud counts. The indictment listed mail and wire fraud as the unlawful activities that generated the proceeds that Chilingirian conspired to launder. But, according to the money laundering statute, a defendant can be guilty of money laundering as long as he knew that his transactions involved proceeds of some unlawful activity -- he does not have to know what form the unlawful activity took. Therefore, while the money did have to have come from the specified unlawful activity of wire and mail fraud, Chilingirian did not have to know that this was an element of the charged offense. Given that Chilingirian did not have to be aware of this element, it would be illogical to conclude that Chilingirian himself actually had to have committed that unlawful activity.

In sum, proving that Chilingirian committed mail and wire fraud was never essential to proving that he conspired to launder money. Therefore, a conviction for the latter at the same time as an acquittal on the former did not result in an amendment to the indictment.

## C.  Amendment to the Indictment

Chilingirian argues that the trial court's general finding of not guilty on the mail and wire fraud counts within Count 33 renders the judge's verdict fatally defective.  Specifically, he alleges that the failure to establish the elements of mail and wire fraud mandates that the verdict must be reversed because the guilty finding rests upon an impermissible amendment of the indictment.  He further argues that this error gave the government a wider and unlawful berth and lessened the government's burden in establishing the act elements as charged in Count 33.

The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. U.S.CONST. amend. V; *Stirone v. United States*, 361 U.S. 212, 217-19 (1960). "[T]he constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989). "A *variance* [to the indictment] occurs when 'the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'  In contrast, an *amendment* involves a change, whether literal or in effect, in the terms of the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (emphasis added). "This Circuit has held that a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Id*.; *see also United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986) (explaining that a constructive amendment occurs when "there has been a modification at trial in the elements of the crime charged"). The defendant has the burden of proof on this issue. *Barrow*, 118 F.3d at 489.

the defendant to wait for the hearing panel's decision is a violation of an individual's due process rights under the Fifth Amendment.  In addition, he argues that denial of bail for the primary purpose of punishing the defendant is unreasonable and violates the Eighth Amendment.  However, Chilingirian has not identified a single case in which any court has held that the Bail Reform Act of 1984 is unconstitutional.  To the contrary, this Court and others have generally upheld the Act against constitutional challenges.  For instance, in *Pollard*, this Court held that "the Bail Reform Act of 1984 does not violate a defendant's procedural due process rights by requiring the district court to determine that an appeal raises a substantial issue before granting bond pending appeal." 778 F.2d at 1182; *see also United States v. Perry*, 788 F.2d 100, 111 (3d Cir. ), *cert. denied*, 479 U.S. 864 (1986) (federal courts that have addressed the issue have held that there is no absolute right to bail); *United States v. Portes*, 786 F.2d 758, 766 (7th Cir. 1985) (neither the historical evidence nor contemporary fundamental values implicit in the criminal justice system requires recognition of the right to bail as a "basic human right," which must then be construed to be of constitutional dimensions); *United States v. Giangrosso*, 763 F.2d 849, 851 (7th Cir. 1985) (holding that Bail Reform Act would not violate the Eighth Amendment and/or due process guarantees even if the standard for granting bail pending appeal involves the question of whether the lower court is likely to be reversed). We do not see any constitutional problems with this Act, and, likewise, Chilingirian has not raised any.

## B. Inconsistency of Verdicts

The district court acquitted Chilingirian on all counts of the indictment except Count 33--Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h). Chilingirian argues that his acquittal on the mail and wire fraud counts, and conspiracy to commit mail and wire fraud under 18 U.S.C. § 371, was inconsistent with the court's guilty verdict on Count 33.  The question of whether an

inconsistent verdict rendered by a judge is reviewable, or grounds for reversal or a new trial, has not been resolved in this circuit.

The Supreme Court has held that "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *United States v. Powell*, 469 U.S. 57, 58 (1984) (citing *Dunn v. United States*, 284 U.S. 390 (1932)). This rule applies even where the jury acquits a defendant of a predicate felony at the same time as it convicts on the compound felony. *See id.* at 67-69.

Chilingirian, however, was tried to the bench. He argues that inconsistent verdicts rendered by a judge are reviewable as a check against arbitrary exercises of power. He relies primarily on *United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960), and *United States v. Duz-Mor Diagnostic Lab, Inc.*, 650 F.2d 223 (9th Cir. 1981). Neither case is persuasive.

At trial, the government suggested that if Chilingirian conspired to launder money, then he also conspired to defraud. Defendant asserts that these findings are incompatible with the theory of the case and must be reconciled with the evidence presented. Consequently, he argues that the guilty verdict on the money laundering count should have been vacated and the district court should have entered his motion for acquittal on that charge.

In *Harris v. Rivera*, 454 U.S. 339 (1981), the Supreme Court considered the question of inconsistent verdicts rendered by a trial judge. The Court acknowledged the general rule that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" and rejected the contention that "a different rule should be applied to cases in which a judge is the finder of fact." *Id.* at 345. However, *Harris* is a case of collateral review. The defendant had been convicted in state court and had submitted a petition for a writ of habeas corpus in federal court, arguing that his guilty verdict was inconsistent from his co-defendant's acquittal. Thus, the Court was limited to looking for a constitutional

violation and specifically noted that "this case does not raise any question concerning the significance that an appellate court may attach to an apparent inconsistency in a verdict that is subject to review on direct appeal." *Id.* at 462-63.

Nonetheless, the Court's rationale that inconsistencies alone should not be the sole basis for setting aside a court's finding is still applicable here. The Court explained that inconsistent verdicts could result when:

> the judge's actual observation of everything that transpired in the courtroom created some doubt about the guilt of one defendant that he might or might not be able to articulate in a convincing manner. In this case, if the judge was convinced beyond a reasonable doubt that [two defendants] were both guilty, it would be most unfortunate if a concern about the plausibility of a lingering doubt about [a third defendant] should cause him to decide to convict all three rather than to try to articulate the basis for his doubt.

*Id.* at 347. Moreover, an apparent inconsistency in a trial judge's verdict does not give rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the presumption that the judge adhered to basic rules of procedure. *Id.*

Both prior and subsequent to *Harris,* other circuits have held that inconsistent verdicts rendered by a judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury. *See, e.g., United States v. West*, 549 F.2d 545, 553 (8th Cir. 1977) ( "adher[ing] to the general rule that consistency between the verdicts on a multiple-count indictment is unnecessary when a defendant is convicted on one or more counts but acquitted on the remainder."); *United States v. Wright*, 63 F.3d 1067, 1074 (11th Cir. 1995) (holding "inconsistent verdicts, whether provided by juries or judges, are not subject to reversal merely because they are inconsistent."). We agree with the reasoning of those circuits.