NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0829n.06

No. 11-6037

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

*Aug 01, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JAY A. SHEPHARD, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

**Before:  SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.***

**STEPHEN J. MURPHY, III, District Judge.**  Jay Shephard was convicted after a five-day jury trial of conspiracy to distribute oxycodone and methadone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1), 1956(a)(1)(A)(i), and (a)(1)(B)(i).  He was sentenced on August 17, 2011, to 360 months as to count one and 240 months as to count two, to be served concurrently, for a total of 360 months' incarceration.  Shephard argues on appeal that his sentence and conviction should be vacated for the following reasons: (1) the district court erred by failing to provide a jury instruction regarding multiple conspiracies; (2) there was a constructive amendment to the indictment; (3) his Fourth Amendment rights were violated when the government placed GPS tracking devices in his co-conspirators' vehicles; (4) the district court erred by not requiring the jury to determine the pill quantity attributable to him; (5) the district court erred by treating the Sentencing Guidelines as

---

*The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

mandatory when considering the drug conversion table; (6) the district court erred in determining

the drug quantity attributable to him; and (7) the district court erred by relying on information at the

sentencing hearing that was obtained in violation of *Kastigar v. United States*, 406 U.S. 441 (1972).

Because we find Shephard's arguments lack merit, we **AFFIRM**.

## BACKGROUND

Jay Shephard was charged in a third superseding indictment with conspiring with Evans

Moore and others to distribute oxycodone and methadone beginning "on or about a day in May,

2006" and continuing through "on or about May 21, 2009." Third Superseding Indictment, R. 174.

Additionally, it charged that, during this same time period, Shephard conspired with others to acquire

real and personal property in Ohio and Michigan using proceeds from the unlawful distribution, in

order to disguise the nature, location, and source of the illegal drug proceeds. *Id.* The government

introduced evidence at trial that Shephard provided oxycodone to individuals who would increase

the price and sell the pills to others, who would then increase the price again and sell it to other

dealers or the ultimate users. The conspiracy began to unravel when Kentucky police detectives

arrested Rhonda Patrick for possession of oxycodone and sought her cooperation in identifying the

source of her drugs.

Patrick admitted that she had been visiting Dayton, Ohio, where she acquired drugs from

Sunday Satterwhite and Karl Stevie Trammell. Watkins Tr. at 136, 151-53, R. 293. Patrick began

buying 80-milligram oxycodone pills from Satterwhite in 2006. *Id.* at 138; Satterwhite Tr. at 49, R.

294. Satterwhite was obtaining the pills from Tony Edwards in Detroit, Michigan at this time and

selling them in Dayton. Satterwhite Tr. at 48, R. 294. At some point prior to Edwards' death in

September 2007, Satterwhite had a falling out with him, and began getting her pill supply from Trammell, who was getting his supply from Shephard. *Id*. at 55, 59, 61. The 80-milligram oxycodone pills Trammell and Satterwhite obtained from Shephard in 2007 and 2008 were distributed in Dayton, Ohio and Hazard, Kentucky to other individuals, including Patrick, Evans Moore, Edwin Kirkland, and Janele Pitts. *See* Mem. Order 4, R. 368. Trammell and Moore were arrested in Perry County, Kentucky after they were stopped by police and found to have 402 oxycodone 80-milligram pills in their car. They were housed at Perry County jail where several telephone calls between them and Shephard were recorded.

The original indictment, filed May 8, 2009, charged Shephard, Moore, Pitts, and Kirkland with conspiring to distribute oxycodone and methadone. Pitts and Moore were also charged with distribution and attempted distribution. Trammell was prosecuted in a separate related action, along with Satterwhite and seven others, for conspiracy to distribute and distribution of oxycodone from March 2006 until May 5, 2008. *United States v. Trammell*, No. 08-00167 (E.D Ky. 2009). Shephard was the only defendant not to enter a guilty plea. A jury ultimately found him guilty of conspiracy charges based on a third superceding indictment, which named only Shephard and Moore as defendants.

After the jury found Shephard guilty of the conspiracy counts, the district court submitted the issue of forfeiture to the jury. The jury returned a special verdict finding specific property listed in the indictment was used in or acquired through Shephard's illegal conduct. Special Verdict, R. 252. The district court used the total market value of this property to calculate the pill amount attributable to Shephard for sentencing purposes. Mem. Order 8, R. 368. The court determined the price of each

3

pill was $35 based on a proffer Shephard made to police on June 3, 2009. *Id.* at 3. This proffer was considered only after Shephard elected to testify at the sentencing hearing and the prosecutor used his prior statements for impeachment purposes. The court used the value of the forfeited property and divided it by the price Shephard charged for each pill, to calculate that Shephard had sold 15,087 oxycodone 80-milligram pills. It then used the marijuana equivalency table provided in the United States Sentencing Guidelines to determine his base offense level. After combining his base offense level with his criminal history category, the district court found that Shephard's advisory guideline range for count one was 360 months to life imprisonment and sentenced him to 360 months' imprisonment. Shephard now appeals his sentence and conviction, presenting seven issues for this Court's review.

## DISCUSSION

### I. Multiple Conspiracies Instruction

Shephard argues that the evidence presented at trial demonstrated the existence of two conspiracies, and that the failure to provide the jury with an instruction regarding multiple conspiracies allowed it to convict him based on evidence unrelated to his own conduct. He contends that Satterwhite obtained oxycodone from Edwards from 2004 until 2007 and that this conspiracy was separate from the one involving him, Satterwhite, and Trammell. He maintains that he was only implicated in the second conspiracy, which involved Satterwhite and Trammell, from late 2007 until May 2008.

Because Shephard did not request a multiple conspiracies instruction and did not object to the instruction given, this Court is limited to reviewing the issue for plain error. *United States v.*

*Osborne*, 673 F.3d 508, 511 (6th Cir. 2012) (citing *Johnson v. United States,* 520 U.S. 461, 465-66 (1997)). To demonstrate plain error, Shephard must show "(1) error (2) that was plain, (3) that affected substantial rights and (4) that, if uncorrected, would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Shephard argues that "[t]he requisite need for a multiple conspiracy jury instruction centers on the undisputed fact that Satterwhite relied completely on Tony Edwards as her source from 2004 up until 2007." Appellant Br. 13. But, the fact that some members may have left the conspiracy while others joined, does not mean that an entirely new conspiracy was formed. "A single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis on its locale of operations." *United States v. Segines,* 17 F.3d 847, 856 (6th Cir. 1994) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1456 (6th Cir. 1991)). Conspiracies to distribute narcotics are often "chain" conspiracies, involving numerous sales and resales of drugs, and an agreement can be inferred from the interdependent nature of the criminal enterprise. *United States v. Deitz*, 577 F.3d 672, 678 (6th Cir. 2009).

Although the source of Satterwhite's drugs changed when she stopped purchasing them from Edwards, this fact did not change the common goal or nature of the scheme. "The principal considerations to determine the number of conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings." *United States v. Warman*, 578 F.3d 320, 341-42 (6th Cir. 2009) (quoting *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003)). Here, the goal and nature of the scheme remained the same when Shephard joined

and became Satterwhite's source through Trammell. The relevant factors suggest the existence of a single conspiracy in this case and, therefore, a multiple-conspiracies instruction was not warranted.

Even assuming the evidence did show the existence of two separate conspiracies, and that the district court erred by not instructing the jury accordingly, Shephard cannot show that the error was "clear or obvious, rather than subject to reasonable dispute," to meet the second prong of plain error review. *United States v. Ferguson*, 681 F.3d 826, 833 (6th Cir. 2012) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Additionally, he cannot show he was prejudiced by the decision not to give a multiple conspiracies instruction. "[T]he primary risk associated with the failure to give a multiple conspiracy instruction is the transference of guilt from defendants involved in one conspiracy to defendants in another conspiracy, such that a defendant is convicted for a conspiracy for which he was not indicted." *United States v. Caver*, 470 F.3d 220, 246 (6th Cir. 2006). There was little risk of guilt transference in this case. At most, the evidence could have demonstrated two conspiracies; Shephard was the only defendant tried; the trial only lasted five days; and there was significant evidence of Shepard's involvement in the conspiracy, including testimony of co-conspirators, telephone records, and recordings of jail telephone calls between Shephard, Moore, and Trammell. Shephard has failed to show he was convicted for a conspiracy other than the one for which he was indicted. In light of this evidence, he cannot show he was prejudiced or that his substantial rights were affected by the court's decision not to provide a jury instruction on multiple conspiracies.

## II. Constructive Amendment

Shephard's second argument is closely tied to his first. He contends a constructive amendment occurred because the indictment and jury instructions stated the conspiracy began in 2006, but the evidence showed he was not involved in the conspiracy until "late 2007, after the demise of Tony Edwards." Appellant Br. 16. He argues that this allowed the jury to convict him based on acts that took place outside the parameters of the indictment. Because Shephard did not raise an objection before the district court that there had been a constructive amendment to or variance from the terms of the indictment, this Court reviews the issue for plain error. *United States v. Benson*, 591 F.3d 491, 497 (6th Cir. 2010).

A constructive amendment occurs "'when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *Ferguson*, 681 F.3d at 830 (quoting *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002)). Because constructive amendments infringe upon the Fifth Amendment's grand jury guarantee, they are considered "per se prejudicial." *Id.* (quoting *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006)). Variances, however, are not per se prejudicial. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). They generally occur where the terms of the indictment are not changed, but the evidence submitted at trial "proves facts materially different from those alleged in the indictment." *Id.* (quoting *Prince,* 214 F.3d at 756-57). A variance can be established based on the evidence submitted at trial. *Id.* at 522. Conversely, to prove a constructive amendment occurred, a defendant must show that "the important functions of

an indictment were undermined by both the evidence presented and the jury instructions." *Id.* (quoting *Hynes*, 467 F.3d at 962).

The indictment charges Shephard with conspiracy beginning "[o]n or about a day in May, 2006, the exact date unknown, and continuing through on or about May 21, 2009." Third Superseding Indictment 1-2, R. 174. Shephard claims, however, that the testimony presented at trial showed his involvement did not begin until late 2007. Appellant Br. 17. Even accepting Shephard's argument on this point, what he has described is a variance, and not a constructive amendment since the jury instructions tracked the indictment. For a variance to constitute reversible error, a defendant must show that it affected some substantial right. *Budd*, 496 F.3d at 521-22. A defendant's substantial rights are prejudiced if his defense is undermined by the change or if he could be subjected to another prosecution for the same offense. *Id.* at 527. Shephard has failed to show how the variance prejudiced any substantial right. Shephard joined an ongoing conspiracy and cannot show there is a "substantial likelihood that [he] may have been convicted of an offense other than the one charged in the indictment." *Id.* at 521 (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)).

## III.  GPS Information

Shephard claims that GPS information gained  from his co-conspirators' vehicles was used in violation of his Fourth Amendment rights. He did not file a motion to suppress this information prior to trial and, generally, the failure to do so results in a waiver of any objection to the evidence on appeal. *See United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006). Although Shephard contends that the Supreme Court's recent decision in *United States v. Jones*, 132 S. Ct. 945

(2012), provides a basis for this Court to review his Fourth Amendment argument because it presents a new constitutional rule, *Jones* did not create any new privacy right that would give Shephard standing to contest the searches at issue.

To prevail on his Fourth Amendment claim, Shephard must show that he had a legitimate expectation of privacy that was violated by an illegal search. *United States v. Washington,* 573 F.3d 279, 282-83 (6th Cir. 2009). He has failed to make this showing. The government asserts "[i]t is undisputed that the police did not place a tracker on any vehicle owned, driven, or occupied by Shephard." Appellee Br. 33. Shephard does not disagree with this statement and, therefore, has failed to show he had any legitimate expectation of privacy in his co-conspirators' vehicles.

IV. Pill Quantity Determination

Shephard submits as his fourth basis for appeal that "[t]he issue regarding Oxycontin pill quantity is a material one that was constitutionally required to be submitted to the jury." Appellant Br. 20. But, he fails to provide any support for this argument. Shephard did not request that the jury be instructed to determine the quantity of pills involved in his charged offense. Rather, when the district court asked prior to the start of trial if there was a need to have the pill amount determined by the jury, defense counsel responded that it wasn't necessary and would be superfluous, since it did not trigger a mandatory minimum. Pretrial Conference Tr. 57-58, R. 290. Thus, we review this issue for plain error. *Osborne*, 673 F.3d at 511 (6th Cir. 2012).

A district court is required to submit to a jury any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the statutory maximum, and this fact must be proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000). The

9

statutory maximum "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis omitted) (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002)).

Here, a jury found Shephard guilty of count one of the indictment, conspiracy to distribute oxycodone and methadone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and of count two of the indictment, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1), 1956(a)(1)(A)(i), and (a)(1)(B)(i). The indictment advised that the penalty for count one was "[n]ot more than 20 years imprisonment," but if the defendant had been convicted of a prior drug felony then "[n]ot more than 30 years imprisonment." Third Superseding Indictment 8, R. 174. The maximum penalty for count two was twenty years' imprisonment. *Id.* Because Shephard had a prior drug felony he was subject to the thirty-year penalty on count one. Application of the thirty-year maximum did not require a finding that a specific quantity of drugs was involved in the offense. 21 U.S.C. § 841(b)(1)(C). The district court sentenced Shephard within the statutory maximum. Thus, the district court was not required to submit the issue of pill quantity to the jury, since it was not an issue that increased the penalty for Shephard's crime beyond the statutory maximum.

V. Sentencing Guidelines

Shephard contends that the district court violated the requirements of *Booker* when it treated the drug conversion table of the Sentencing Guidelines as mandatory. The Court reviews legal conclusions regarding the Sentencing Guidelines de novo and factual findings for clear error. *United States v. Anderson*, 526 F.3d 319, 323 (6th Cir. 2008).

The sentencing range provided by the guidelines is advisory; but the sentencing court must still properly calculate and consider the Guidelines along with other statutory factors. *United States v. Booker*, 543 U.S. 220, 245 (2005). Failing to calculate or improperly calculating the Guidelines range is a significant procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). After the range is correctly calculated, the district court treats the range as advisory and considers other statutory factors in determining the sentence to impose. *Id.* at 49–50. Here, the district court properly used the drug conversion table of the Sentencing Guidelines to calculate Shephard's Guideline range. Once the district court calculated the appropriate Guideline range it did not treat that range as mandatory and, thus, did not err.

## VI. Drug Quantity Calculation

Shephard claims that the court improperly estimated the amount of oxycodone attributable to him and that it "improperly used both the total market value of the property the jury found that was subject to forfeiture, plus the money judgment of $225,000 found by the jury." Appellant Br. 28. He argues the district court's calculations resulted in "double counting."

The district court's drug quantity determination is a factual finding that the Court reviews for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007) (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). The district court's finding, regarding drug quantity used to compute the defendant's sentence, "'must be supported by

11

a preponderance of the evidence.'" *Benson*, 591 F.3d at 502 (quoting *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009)).

When the exact quantity of drugs attributable to a defendant is undetermined, a court may estimate the amount of drugs as long as a preponderance of the evidence supports the estimate. *Jeross*, 521 F.3d at 570. This approximation of drug quantity "is not clearly erroneous if it is supported by competent evidence in the record." *Id.* Here, the district court issued a memorandum order detailing the facts it found by a preponderance of the evidence, that formed the basis for its sentencing decisions. *See* Mem. Order. R. 368. Rather than rely solely on the testimony of Shephard's co-conspirators, the district court "chose to use the objective valuations of the properties, which the jury found by a preponderance of the evidence to be subject to forfeiture." *Id.* at 8. The court estimated that Shephard was responsible for 15,087 oxycodone 80mg pills, instead of the 40,000 pills recommended by the probation officer. *Id.* at 6-8. It arrived at this figure by "considering the undisputed values of the properties which the jury found were subject to forfeiture (Doc. #252), $678,325.24, less a credit for the amount of legitimate sources of income or loans referenced in Doc. # 361 ($150,263.77), divided by the sales price of $35 per pill that Defendant was charging Trammell." Mem. Order 4, R. 368. A similar formula was approved by this Court in *Layne*, in which the district court divided the amount of money seized from the defendant by the price he charged for each unit of drugs to determine the amount of drugs attributable to the defendant for sentencing. *United States v. Layne*, 192 F.3d 556, 578 (6th Cir. 1999). Shephard has failed to show that the court erred in its calculation of the pill quantity attributable to him.

## VII. Immunized Statements

Shephard's final argument is that his sentence should be vacated because the district court relied on information gained from his proffer, in violation of *Kastigar*, to enhance his sentence. *Kastigar v. United States*, 406 U.S. 441 (1972). Shephard did not object to the testimony that he now claims violated his proffer agreement, and he did not object to the court's consideration of information gained from his proffer. Thus, we review the issue for plain error. *United States v. Powers,* 500 F.3d 500, 505 (6th Cir. 2007).

In *Kastigar*, the Court found that when the government seeks to compel testimony by granting immunity as to the contents of an individual's testimony, the scope of the privilege must be as broad as that provided by the Fifth Amendment. *Kastigar*, 406 U.S. at 453. *Kastigar* has little, if any, relevance to Shephard's case because Shephard was not compelled to testify; rather, he voluntarily took the stand at the sentencing hearing and his proffer was used to impeach his statements. This use was permitted by the agreement that Shephard entered into with the Government. Letter Agreement, R. 383-1. Shephard fails to demonstrate any breach of the agreement or that the Court erred by considering his statements.

### III. CONCLUSION

For the foregoing reasons, Shephard's conviction and sentence are **AFFIRMED**.