**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0202n.06
Filed: March 22, 2005

**No. 03-2414**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| TIMOTHY KOSINSKI, | ) | District of Michigan |
| | ) | |
| *Defendant-Appellant*. | ) | |

**Before: BOGGS, Chief Judge; MARTIN, Circuit Judge; and WEBER, District Judge.**[*]

**PER CURIAM**. Timothy Kosinski appeals from his criminal convictions stemming from tax fraud. He argues that 1) prejudicial testimony was introduced at trial, 2) the indictment was constructively amended, 3) the jury was improperly instructed, 4) Count One (Conspiracy) of the indictment was legally insufficient, 5) his motion for acquittal on Count One (Conspiracy) was erroneously denied, 6) his sentence was miscalculated under the Guidelines, and 7) he was sentenced in violation of the Sixth Amendment. For the following reasons, we affirm his conviction, but vacate his sentence and remand for resentencing.

**I**

On June 20, 2002, a grand jury returned a nine-count indictment against Timothy Kosinski:

---

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

one count of conspiracy to defraud the IRS and to structure currency transactions to evade reporting requirements, five counts of subscribing a false federal tax return, and three counts of structuring a currency transaction to evade reporting requirements. A jury found Kosinski guilty on seven counts, and not guilty on two of the three structuring counts. The district court sentenced Kosinski pursuant to the Sentencing Guidelines. The court found an offense level of nineteen, which corresponds to a range of thirty to thirty-seven months of imprisonment for offenders with no criminal history. The district court then sentenced Kosinski to thirty months of imprisonment for Counts One and Seven and thirty months of imprisonment for Counts Two through Six, to run concurrently. Kosinski was also ordered to pay an assessment of $7,000, a fine of $60,000, and the costs of incarceration.

Kosinski is a dentist, who founded T.J. Construction ("T.J.") in 1992, after the death of his father. His father was a carpenter and independent contractor, and he had done work with Thyssen Steel Incorporated ("Thyssen"). Thyssen manufactures steel wire, steel coil, and other steel products. Under Kosinski, T.J. picked up where his father had left off, and continued to do work for Thyssen. Thyssen was in the midst of a multi-million dollar expansion of its warehouse system, in which T.J. had considerable involvement. Specifically, T.J. acted as a "quasi-general contractor" for major aspects of a warehouse expansion project in Detroit, Michigan, and as a true general contractor for the construction of a new warehouse in Richburg, South Carolina.

Phillips Contracting Company, which was run by Melvin Phillips, served as a subcontractor for T.J. on the Thyssen projects, doing most of the concrete, excavation, and underground utility work. T.J. handled paperwork for Phillips, and, at Melvin Phillips's request, paid in cash for work performed. Kosinski and Melvin Phillips worked together for several years and were friends. Their

relationship as business associates was particularly close, so much so that two of Phillips's employees testified that they believed Kosinski and Phillips were partners.

Between 1996 and 1998, checks totaling $8,143,625 were drawn on T.J.'s business account and made payable to Melvin Phillips or Phillips Contracting, but were deposited in Kosinski's personal bank accounts. Kosinski and his associates withdrew most of the money in cash, and used much of the cash to make payments to Phillips. Kosinski concealed the flow of this money by making numerous withdrawals of $9,500 – below the $10,000 reporting threshold. Kosinski, his wife, and his employee, Nina Spratt, often engaged in multiple transactions on a single day. Between January 1995 and May 1999, Kosinski and his associates withdrew $7,676,000 in cash from his various personal accounts. Although Kosinski claimed tax deductions for the full amount of $8,143,625, at least $1,400,000, and possibly more, was never paid to Phillips Contracting.

Melvin Phillips paid his employees with a combination of checks and cash. Neither the checks nor the cash payments reflected any withholding. Phillips Contracting did not file any employment tax returns with the IRS between 1995 and 1999. Testimony was introduced that Phillips had agreed with employees to pay them less in return for not withholding any taxes, with the awareness that the employees would not pay those taxes. Melvin Phillips claimed that he used cash to pay suppliers in order to get a better deal; for instance, he claimed to have spent over $1,000,000 in cash on concrete. The project's concrete suppliers, however, denied having ever received a cash payment, and the defense produced no witness or document that confirmed any cash payments for supplies.

Kosinski also claimed a business deduction for work done between 1996 and 1998 at his primary home, his vacation home, and his mother's home. Kosinski paid for the work out of T.J.'s

business account, and then claimed deduction for the work on T.J.'s income tax. Contractors are not permitted to take business deductions for work performed at their home or the home of a relative.

Al Paas, the architect overseeing the project for Thyssen, acted as the owner's construction manager. On at least three occasions, he received an envelope from Kosinski containing $5,000 in cash. Although the record is somewhat unclear about the date of these payments, there was at least some testimony that the payments were made during the period of the conspiracy: 1995 to 1999. Kosinski told Paas to "use" the money and never asked for receipts, nor was the money reported to the IRS by any party. In mid-1996, Paas recommended to Thyssen that Kosinski receive an additional $400,000 in performance bonuses. Paas did not inform Thyssen of the $5,000 payments he recieved, but he testified that they did not influence his handling of the project in any way.

## II

Kosinski makes five claims seeking reversal of some or all of his convictions. He also argues that his sentence was calculated incorrectly and that applying the Sentencing Guidelines violated his Sixth Amendment rights.

### A. Prejudicial Testimony

Kosinski argues that the testimony of Paas about the $5,000 payments and their purpose was improperly admitted and prejudicial. He claims that the government elicited the testimony to show that he bribed Paas and received favorable contracts and an increase in the performance bonus. He argues that in a trial for conspiracy to defraud the IRS, this testimony had no probative value and was prejudicial. Kosinski also argues that the testimony showed that the $5,000 payments took place in 1991 or 1992, before the conspiracy occurred. Kosinski's counsel objected to the testimony at trial and subsequently moved for a mistrial.

We review for abuse of discretion the district court's denial of a motion for mistrial. *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995). Although Kosinski never cites it, presumably he is arguing that the evidence was inadmissible under Federal Rule of Evidence 404(b), which provides in relevant part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence is admissible, however, if it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Ibid*. Finally, even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

It is clear from the record that the government elicited extensive testimony suggesting that Paas was paid bribes to secure favorable contracts and bonuses for T.J. The prosecutor's questions clearly intimated a link between the payments to Paas and T.J.'s increased performance bonus. From the testimony elicited on direct examination, the jury probably could infer a link between the payments/bribes and the favorable contracts T.J. was awarded without competitive bidding.

Kosinski is simply wrong, however, to assert that the payments were clearly outside the time-frame of the conspiracy. Although the testimony is somewhat conflicting, at one point Paas was asked if he knew where the money from the $7,600,000 in cash generated during 1995 to 1999 was spent. He eventually conceded that some of it went to pay him. There is apparently contradictory testimony elsewhere, but the jury reasonably could have concluded that the payments occurred during the relevant time-frame.

The testimony was probative because the $5,000 cash payments themselves were tax

evasions. Kosinski paid the $5,000 without witholdings, and Paas never reported the payments. Paas testified that the money was used for expenses or given to charity, but there is no evidence to support this and the jury could conclude the $5,000 payments were unreported income. This would make Paas a participant, if a minor one, in the conspiracy to avoid reporting income and paying taxes. The favorable treatment from Paas, such as the increased performance bonus, is thus relevant to showing why the bribes were paid and why the jury should disbelieve the claim that the money was for expenses and charity.

The bribery testimony was not unduly prejudicial. Obviously, evidence that Kosinski paid bribes casts his general moral character in an unfavorable light. But the testimony showed both that Paas was participating in the conspiracy by personally evading taxes and by facilitating or acquiescing to the rest of the scheme. Therefore, we conclude the district court did not abuse its discretion in admitting the testimony.

### B. Constructive Amendment of the Indictment

Kosinski claims that the indictment was constructively amended so that it was possible that the jury convicted him of bribery, rather than the charges on which he was indicted. He argues that the evidence of bribery was improperly introduced, and the jury instructions on Count One (Conspiracy) permitted a guilty verdict even if the jury found that defrauding the IRS was only a collateral or incidental effect of the conspiracy. This claim is without merit.

The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury. *Stirone v. United States*, 361 U.S. 212, 217-19 (1960). "[A]n amendment involves a change, whether literal or in effect, in the terms of the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997). "This Circuit has held that

a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions that so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002). We review the question of whether there was an amendment to the indictment *de novo. Id*. at 709.

As we concluded above, the evidence of bribery was properly admitted. Even though properly admitted, however, it may still have created the possibility of conviction on an uncharged count. To determine whether this could have occurred, we look to the jury instructions. *See United States v. Campbell*, 317 F.3d 597, 607 (6th Cir. 2004) (juries are presumed to follow instructions of the trial judge).

Kosinski's claim here is without merit because the jury instructions make clear that the jury must find intent and agreement to defraud the IRS. The district court started its jury instructions by reading from the indictment, which stated that the jury must find it was "an object of the conspiracy that [the conspirators] would and did defraud the United States *for the purpose* of impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service . . . ." (emphasis added). The court drove the point home by repeating several times during the instructions that the jury must find that Kosinski was part of a conspiracy that intended to defraud the IRS:

> A conspiracy to defraud the United States reaches any conspiracy *for the purpose of* impeding, impairing, obstructing or defeating the lawful function of the government. I instruct you that the Internal Revenue Service is an agency of the Department of Treasury of the United States.
>     . . . .
> [You must find] that two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, by dishonest means.
>     . . . .

-7-

> [T]he Government must prove beyond a reasonable doubt that there was a mutual understanding . . . between two or more people, to cooperate with each other to defraud the United States . . . . This is essential.

(emphasis added). The district court also reiterated that to convict Kosinski the jury must find that he knowingly and purposefully joined the conspiracy and acted to further its aim of defrauding the IRS:

> [T]he Government must prove that the Defendant knew and agreed to the purposes of the conspiracy and knowingly and voluntarily joined the conspiracy.
>     . . . .
> [J]ust because the Defendant may have done something that happened to help a conspiracy does not make him a conspirator.
>     . . . .
> What the Government must prove beyond a reasonable doubt is that the Defendant knew the conspiracies [sic] main purpose, and that he voluntarily joined it intending to help advance or achieve its goals.

Finally, the jury form itself made clear that purpose was a necessary element of the Conspiracy Count:

> As to the first object other conspiracy charged in Count One, that the defendant conspired to defraud the United States *for the purpose of* impeding and impairing the lawful functions of the Internal Revenue Service, we the jury unanimously find the defendant Timothy Kosinski: Guilty.

(emphasis added). Consistent with these instructions, the jury could convict only if it found that the purpose of the conspiracy was to defraud the IRS.

### C. Jury Instruction

Kosinski argues that the district court erroneously rejected his proposed jury instruction with respect to Count One (Conspiracy). Kosinski had asked the district court to include the following instruction: "the Government must prove that Dr. Kosinski had the actual intent to frustrate or impede the IRS, not merely that impeding the IRS was a foreseeable consequence of the

-8-

conspiracy." He argues that in the absence of this instruction, the jury may have convicted even if defrauding the IRS was only a collateral or incidental effect of the conspiracy. This claim has the same basis as the constructive amendment claim, and we reject it for the same reason.

This court reviews jury instructions as a whole to determine whether they fairly and adequately inform the jury of relevant considerations and explain the applicable law to assist the jury in reaching its decision. *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). "Trial courts have broad discretion in drafting jury instructions, and we reverse only for abuse of discretion." *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000) (citations omitted). "A district court's refusal to deliver a requested jury instruction amounts to reversible error only if the instruction (1) is a correct statement of the law, (2) was not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Jackson*, 347 F.3d 598, 606 (6th Cir. 2003) (citations omitted).

The district court did not err because Kosinski's requested instruction was "substantially covered by the charge actually delivered to the jury." As the discussion of jury instructions in the previous section indicates, the district court not only covered this point, but did so in a highly repetitive fashion. The court then repeated that purpose requirement – by a conservative count – at least three times while giving jury instructions. Finally, the jury form also stated that the jury must find purpose to convict on Count One.

### D. Legal Sufficiency of Count One

Kosinski argues that Count One (Conspiracy) of the indictment is insufficient as a matter of law and the district court erred by denying his motion to dismiss the Count. Kosinski asserts that

"[a]llegations of failure to report income are not sufficient to make out a conspiracy to impair and impede the IRS." Kosinski is vague as to which elements of the conspiracy charge are left out, but he states that the indictment "allege[s] only consequences of cash transactions and structuring." From this we infer that he is making an allegation that the indictment does not allege either purpose to defraud the IRS or an agreement to defraud the IRS.

We review *de novo* the sufficiency of an indictment. *United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir. 1998). An indictment is legally sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Superior Growers Supply, Inc*., 982 F.2d 173, 176 (6th Cir. 1992).

The essential elements of a conspiracy are:

(1) the conspiracy described in the indictment was wilfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one overt act charged in the indictment at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

*United States v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996) (citations omitted).

The indictment states all of these elements. It alleges that Kosinski willfully and knowingly joined with others to defraud the IRS. It names several other individuals and alleges that they committed a number of acts with the purpose of defrauding the IRS. The indictment also lists hundreds of overt acts that it alleges were in furtherance of the conspiracy – mostly bank transactions, but also payments to workers and others. Although the indictment does not charge any substantive offense, that is unnecessary for a conspiracy to defraud under 18 U.S.C. § 371. *United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997) (because there is no substantive offense

-10-

underlying a conspiracy to defraud under 18 U.S.C. § 371, an indictment need not refer to any substantive offense).  We therefore reject this claim.

### E.  Judgment of Acquittal on Count One (Conspiracy)

Kosinski claims that denial of his motion for acquittal with respect to Count One (Conspiracy) was in error.  He argues that the evidence, viewed in the light most favorable to the prosecution, failed to establish that impeding and impairing the IRS was an object of the conspiracy.  After two pages summarizing case law, the entirety of Kosinski's argument is the following two sentences:

> In this case, evidence that Mr. Phillips did not pay taxes for his employees or provide 1099's for his subcontractors did not establish evidence of Mr. Phillips [sic] conspiracy with Dr. Kosinski.  A conclusion that an agreement was proved is contrary to the jury instruction that a general contractor has no legal obligation for taxes of his subcontractors.

This argument is without merit.

We must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it.  *United States v. Wells*, 211 F.3d 988, 1000 (6th Cir. 2000).  We allow the government to benefit from all reasonable inferences.  *Ibid*.

The evidence did not show merely that Phillips did not pay taxes or withholding for his employees.  It showed that he conspired with Kosinski to do this.  Kosinski was not free to conspire with Phillips to avoid paying Phillips's employees' taxes merely because he was not responsible for those taxes in the first instance.  Moreover, evading withholding and taxes for employees was only one part of the conspiracy.  Evidence was introduced showing that Kosinski conspired with others to claim illegal deductions for T.J., to conceal revenue from the project, to structure financial transactions so as to avoid reporting, and many other illegal acts.  If the jury found credible the evidence on *any one of these allegations*, it would have been sufficient to convict on Count One

-11-

even if the jury completely discounted the evidence that Kosinski and Phillips conspired to avoid paying their employees' taxes.

### F.  Tax Loss Calculations in Sentencing

Kosinski argues he was sentenced incorrectly.  He argues that his offense level should be determined by U.S.S.G. §2S1.3 instead of U.S.S.G. §2T1.9.  He also argues that the calculation of tax loss was erroneous.

Although we review interpretations of the Guidelines *de novo*, the determination of the amount of loss is a finding of fact that we will not disturb unless clearly erroneous.  *United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998).  "When a district court calculates the amount of loss caused by a crime involving fraud or deceit, the court need not determine the amount of loss with precision.  The guidelines require a district court to make a reasonable estimate . . . ."  *United States v. Kohlbach*, 38 F.3d 832, 835 (6th Cir. 1994).

The district court correctly applied U.S.S.G. §2T1.9 to the conspiracy charge in Count One.  The guideline applicable to structuring, U.S.S.G. §2S1.3(c)(1), states that "if the offense was committed for the purpose of violating the Internal Revenue laws, apply the most appropriate guideline from Chapter 2, Part T (Offenses Involving Taxation) if the resulting offense level is greater than that determined above."  The offense level under  U.S.S.G. §2S1.3 is 6; whereas under U.S.S.G. §2T1.9 the minimum offense level is 10.  Thus, U.S.S.G. §2T1.9 applies.

The defendant argues that  we cannot be sure the offense was committed for the "purpose of violating" tax laws, noting that Count One identified two aims of the conspiracy (to structure and to defraud the IRS), and asserting that the jury was not asked to return a verdict on whether the conspiracy was to structure or to defraud the IRS (or both).  This is simply a misrepresentation; the

jury form breaks out the two purposes of the conspiracy in Count One and the jury found defendant guilty with respect to both.

The district court did not commit clear error in calculating the amount of tax loss. The district court began with the $5,635,000 in cash between 1996 and 1998 that was paid to Melvin Phillips. At Phillips's (separate) sentencing, it was estimated that 40% of the cash payment Phillips received was used for the cash payroll, and the district court used the same assumption here. That put the unreported payroll at $2,254,000; the district court then took 28% of that figure as an estimate of tax loss, pursuant to U.S.S.G. §2T1.1. This produced a tax loss of $631,176, which was used to calculate Kosinski's offense level. Kosinski argues that because he was not legally responsible for the taxes of Phillips's subcontractors, he should be assessed only the unreported wages of Phillips's direct employees, excluding subcontractors. However, even if Kosinski was not responsible for the subcontractors' taxes, he was part of a conspiracy to avoid payment of taxes for Phillips's employees and subcontractors alike. Thus, it was reasonable for the district court to include the unpaid taxes of the subcontractors as part of the tax loss associated with the conspiracy.

Finally, Kosinski challenges the tax loss calculations of the district court with respect to Counts Two through Six (Subscribing a False Tax Return). Kosinski argues that the checks made out to Phillips, but deposited in Kosinski's personal account, are loan repayments and should not be included as unreported income. But since there is no evidence of this loan agreement, the district court did not commit clear error by concluding otherwise. Kosinski also claims that the court erred because $342,000 of the amount considered as tax loss was really diverted income, and should be multiplied by 28% to get tax loss. Kosinski does not explain why this is so, except by citation to motions filed below, and therefore waives this claim.

-13-

G. Sentencing under the Guidelines

Kosinski also argues that the district court erroneously sentenced him based on facts not found by the jury, in contravention of *United States v. Booker*, 125 S. Ct. 738 (2005). He argues that this case should be remanded for resentencing. We agree.

In *Booker*, the Supreme Court concluded that judicial fact-finding which led to a sentence under the Guidelines greater than that authorized by the jury verdict alone violated the Sixth Amendment. *Id.* at 755-56. The Court's solution was to strike 18 U.S.C. § 3553(b)(1), which is the provision making the Guidelines mandatory. *Id.* at 756-57. The Court left intact the remainder of the Guidelines, instructing that they must be consulted by a sentencing court but are no longer binding. *Ibid.* The Supreme Court has instructed us to apply *Booker* to cases on direct review using "ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." *Id.* at 769.

Although Kosinski did not raise a Sixth Amendment objection in the sentencing court, he did object to the factual determinations made by the judge. Before this court, he filed briefs with Sixth Amendment arguments based first on *Blakely v. Washington,* 124 S. Ct. 2531 (2004), and then on *Booker*, as those cases were decided. We are satisfied that the objection below to judicial fact-finding preserved the Sixth Amendment issue for review.

This case is factually indistinguishable from *Booker* itself and thus resentencing is required. Booker was convicted by a jury of possessing at least 50 grams of cocaine. 125 S. Ct. at 746. At sentencing, the district court determined that Booker possessed at least 616 grams of cocaine and sentenced him accordingly. *Ibid.* Had Booker been sentenced on the jury's finding alone, the Guideline range would have been 210 to 262 months. *Ibid.* Instead, based on the district court's

finding that Booker possessed more cocaine, Booker received a sentence of 360 months. *Ibid.* The Supreme Court concluded that because only 50 grams was argued to the jury, the sentence exceeded that authorized by the jury verdict and thus violated the Sixth Amendment. *Id.* at 756. In this case, Kosinski was sentenced based on the amount of tax loss determined by the district court. The jury was never asked to determine tax loss. Without the district court's factual determination of tax loss, the offense level would be 10, corresponding to a sentence of 6 to 12 month. U.S.S.G. §2T1.9. Applying the reasoning of *Booker*, the 30-month sentence Kosinski received plainly went beyond that authorized by the jury. We therefore conclude that Kosinski was sentenced in violation of the Sixth Amendment.

### III

For the reasons set forth above, we **AFFIRM** Kosinski's convictions, but **VACATE** his sentence and **REMAND** for resentencing consistent with *Booker* and this opinion.