HELENE N. WHITE, Circuit Judge
(concurring in part and dissenting in part).
I concur in Part II of the majority opinion finding that the ALJ’s decision not to classify Caudill as a person of advanced age was supported by substantial evidence. Although Caudill’s argument is not without merit, on the facts of this case, I cannot say that the ALJ’s failure to explain his use of Caudill’s chronological age was reversible error. See Bowie, 539 F.3d at 399-400. In any event, Caudill is now older than 55, and thus can presumably reapply for benefits.
I respectfully dissent from my colleagues’ conclusion in Part I, however. I first note that on my reading of the record, the ALJ rested his finding that Caudill had a “limited education” on the res judicata rule, not on his own independent analysis of the evidence. In his decision, ALJ Reynolds incorporated by reference the findings and conclusions in the prior decision rendered by ALJ Francis in 2001. ALJ Reynolds stated that pursuant to Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir.1997), he was bound by those previous findings unless presented with new or additional material evidence or changed circumstances. (2008 Decision, at Tr. 487.) Specifically, ALJ Reynolds stated:
the undersigned takes administrative notice, by reference, of those findings and conclusions appearing in the record through the date of the prior decisions entered by Administrative Law Judge B.R. Francis on August 28, 2001, and [b]y Administrative Law Judge Richard Bentley on March 17, 2005 and April 24, 2007 except where they conflict with the findings of fact and conclusions of law herein. The 6th Circuit case of Drummond v. Commissioner of Social Securi *519 ty, 126 F.3d 837 (6th Cir.1997) requires that consideration be given to the prior Administrative Law Judge decision which contains a finding of a claimant’s residual functional capacity. The Drummond decision requires the undersigned as the adjudicator of this subsequent claim to adopt and be bound by the prior finding of a claimant’s residual functional capacity or other findings required at a step in the sequential evaluation process. The undersigned cannot reexamine or redetermine the finding of a claimant’s residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances.
(Id. at 486-87 (emphases added).) Although not totally clear, this language indicates that ALJ Reynolds thought himself bound by previous ALJs’ determinations of RFC and other issues as a matter of res judicata or collateral estoppel. Although the record before ALJ Reynolds could have supported a finding of either “limited education” or illiteracy, ALJ Reynolds did not make his own determination of the issue. Because I conclude that Drummond does not settle questions regarding how principles of collateral estoppel apply in this case, I depart from the majority’s opinion.
I agree that Drummond held that principles of res judicata apply to decisions of the Commissioner made through trial-type' proceedings by ALJs. Drummond established that principles of res judicata bind the government to the same extent they bind claimants. 126 F.3d at 841-42. But the case does not describe how to apply res judicata or collateral estoppel in a given case. In Drummond, the Commissioner argued “that res judicata does not apply against the Social Security Administration because it was not a party to the proceedings before the ALJ.” Id. at 840-41. This argument was based on 42 U.S.C. § 405(h), which provides that “[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.” The court “rejected] the Commissioner’s contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence,” and held that to the extent that § 405(h) binds claimants, “[p]rinciples of finality and fundamental fairness” require that it also bind the Commissioner. 126 F.3d at 842 (second quotation from Lively v. Sec’y of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir.1987)). Thus, “Q]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.” Id.
There is no indication in Drummond that this Court considered argument about whether and how to apply traditional, common-law principles of res judicata and collateral estoppel in social security cases.
In Hammer v. I.N.S., 195 F.3d 836 (6th Cir.1999), this court enumerated five elements required for collateral estoppel to apply: *520 Id. at 840[1] This Court has not yet decided “whether a party asserting collateral estoppel in a Social Security case, in addition to making the § 405(h) showing that a prior ALJ has made a finding on the same question sought to be litigated, must establish the traditional elements of collateral estoppel.”[2] Brewster v. Barnhart, 145 Fed.Appx. 542, 547 (6th Cir.2005) (unpublished). In the unpublished opinion of Rogers v. Commissioner of Social Security, 225 F.3d 659, 2000 WL 799332, at *5 (6th Cir.2000) (unpublished table opinion), this Court did apply principles of collateral estoppel to a social security disability case, with particular focus on the question whether “the party attempting to relitigate an issue had a full and fair opportunity to try the issue it had previously lost” and whether the issue in question was “essential to the prior judgment.” Id. Prior to that case, in the unpublished opinion of Ginnetti v. Sullivan, 983 F.2d 1066, 1992 WL 393593, at *2 (6th Cir.1992) (unpublished table opinion), this Court applied traditional collateral-estoppel rules in holding that an ALJ’s determination regarding whether a claimant was “ ‘without fault’ in receiving overpayments of benefits” had preclusive effect. In Brewster, also unpublished, the court referenced Rogers, but declined to decide whether to apply “traditional collateral estoppel rules to cases also governed by § 405(h) because ... even under the traditional collateral estoppel framework, [the second ALJ] was bound by [the first ALJ’s] earlier finding on [the claimant’s] past relevant work.” Brewster, 145 Fed.Appx. at 547.
*519 (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.
*520 Application of traditional rules of collateral estoppel would lead to the conclusion that ALJ Reynolds was not precluded from making his own de novo decision about Caudill’s literacy. It is well-settled that both res judicata and collateral estoppel apply to trial-type proceedings by administrative agencies. See Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (“We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.”); United States v. Utah Constr. & Mining Co., 384 U.S. 394, 421, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). This Circuit has repeatedly applied traditional common-law rules of collateral estoppel to assessing the preclusive effect of proceedings by administrative agencies, including decisions of immigration judges, Hammer, 195 F.3d at 840, the National Labor Relations Board, Olchowik v. Sheet Metal Workers’ Int’l Ass’n, 875 F.2d 555, 557 (6th Cir. 1989), the Armed Services Board of Contract Appeals, United States ex rel. Spectrum Control Sys., Inc. v. Staffco Constr., *521 Inc., 107 Fed.Appx. 453, 457-58 (6th Cir. 2004) (unpublished), and state administrative tribunals, Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 367-68 (6th Cir.2007). These authorities, combined with our unpublished opinions in Rogers and Ginnetti, strongly suggest that traditional rules of collateral estoppel should apply to the decisions of ALJs in social security disability cases as well.
This conclusion is bolstered by practical considerations. If ALJs and courts are prevented from applying the traditional collateral estoppel test, all findings of ALJs in SSI hearings are binding on future ALJs considering claims by the same claimant, regardless of whether the issue is essential to the judgment or whether the claimant had a full and fair opportunity to litigate it. This would have the effect of requiring claimants to contest and appeal every finding that is immaterial to the outcome of their claim at the time of the proceeding, but that could later become material in a new claim. Here, that would have required Caudill to recognize that the literacy determination would become material to a new SSI claim after he turned 50, and to appeal the ALJ’s 2001 decision of “not disabled” on the grounds that the ALJ’s determination of his literacy, which had no effect on the outcome of the claim, was in error. This would require the court to devote energy to an issue having no actual bearing on the outcome of the claim. This standard would impose a burden on claimants, ALJs, and federal courts.
Applying traditional collateral estoppel rules, I would find that reconsideration of the issue of Caudill’s literacy is not precluded. Caudill urges this court to distinguish Drummond on the basis that the determination of Caudill’s literacy level was not essential to the 2001 determination of ALJ Francis, and thus that res judicata and collateral estoppel do not apply. It is true, as the majority points out, that in Drummond the first ALJ’s determination of the claimant’s residual functional capability — that she had a RFC for sedentary work rather than medium-level work — was not essential to the judgment insofar as either RFC determination would have resulted in a finding of “not disabled” at the time of the first decision. Likewise, here the first ALJ’s determination of Caudill’s literacy level — that he had limited education rather than illiteracy — was immaterial to the judgment because both findings would have resulted in a finding that he was not disabled as long as he was classified as a “younger individual.” Yet Drummond did not discuss or consider application of the traditional collateral-estoppel test. I would do so here.
For issue preclusion to apply, the resolution of the issue must have been “necessary and essential to a judgment on the merits in the prior litigation.” Hammer, 195 F.3d at 840; see also Bobby v. Bies, -U.S.-,-, 129 S.Ct. 2145, 2152, 173 L.Ed.2d 1173 (2009). “If a judgment does not depend on a given determination, relitigation of that determination is not precluded.” Bobby, 129 S.Ct. at 2152. To determine whether an issue was essential to the prior judgment, “[t]he appropriate question ... is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action....” Restatement (Second) of Judgments § 27, cmt. j (1982).
I would find that the issue of Caudill’s literacy was not recognized by the parties or the ALJ as important or essential to the 2001 judgment. Although the 2001 decision referenced Caudill’s educational history and the results of a test indicating that he reads at a second-grade level, and then found that he has a “limited education,” that issue was not essential to the ultimate *522 determination that Caudill had a “residual functional capacity to perform a restricted range of light work” and was therefore not disabled. (See 2001 Decision, at Tr. 87, 90, 92.) The vast majority of discussion in the 2001 decision concerned Caudill’s physical impairments. (See id., at Tr. 84-90.) A lesser portion of the decision discussed Caudill’s intellectual functioning and IQ score, but that discussion did not focus in any meaningful way on his literacy level. (Id., at Tr. 87-88.) Because Caudill would have been deemed not disabled regardless of whether he was found illiterate, the finding that he had a “limited education” was not essential to the judgment. Cf. Rogers, 225 F.3d 659, 2000 WL 799332, at *5 (“A finding that an applicant’s skills were not transferable is not essential to a judgment denying benefits to that applicant.”).
Further, Caudill lacked an incentive to litigate the issue of literacy in the initial proceeding. For collateral estoppel to apply, the “party to be estopped [must have] had a full and fair opportunity to litigate the issue.” Hammer, 195 F.3d at 840. Such opportunity is lacking “where the opposing party ‘ha[d] little incentive to defend vigorously’ in the first action.” Kosinski v. C.I.R., 541 F.3d 671, 677 (6th Cir.2008) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)) (alteration in original). Because the issue of Caudill’s literacy was immaterial to the outcome of his claim, he had no incentive to contest the ALJ’s finding that he had “limited education” or to argue that the test showing him to have a second-grade reading level demonstrated functional illiteracy.
For these reasons, I do not believe Drummond controls the relevant issue in this case. I would hold that ALJ Reynolds erred in determining that he was compelled by Drummond to adopt the findings of ALJ Francis regarding Caudill’s literacy in the absence of new additional evidence or a change in Caudill’s circumstances. Because ALJ Reynolds merely adopted the findings of ALJ Francis, remand is appropriate for ALJ Reynolds to make his own determination as to Caudill’s literacy. Although there is evidence that supports both a finding of illiteracy (Caudill’s second-grade reading level, developmental reading disability, and testimony about his difficulty reading), and limited education (Caudill’s school attendance through eleventh grade, admission that he has some ability to read, and past work history), the ALJ should independently weigh this evidence and make a determination based on it before this Court assesses the determination under the substantial evidence standard. I do not disagree with the majority that substantial evidence could be found on this record to support a finding of “limited education.” But in order to defer to an ALJ’s determination under the substantial-evidence standard, the ALJ must make his or her own determination of Caudill’s literacy level based on the evidence.

. Other cases in this Circuit have stated the elements differently. In Kosinski v. C.I.R., 541 F.3d 671 (6th Cir.2008), this court identified four required factors:
(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.
Id. at 675 (quoting United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir.2003)).

. 42 U.S.C. § 405(h) provides:
The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.